| |
|---|
| **Diaz v Nagua Taxi Inc.** |
| 2025 NY Slip Op 30044(U) |
| January 7, 2025 |
| Supreme Court, New York County |
| Docket Number: Index No. 155077/2020 |
| Judge: James G. Clynes |
| Cases posted with a "30000" identifier, i.e., 2013 NY Slip Op 30001(U), are republished from various New York State and local government sources, including the New York State Unified Court System's eCourts Service. |
| This opinion is uncorrected and not selected for official publication. |

# SUPREME COURT OF THE STATE OF NEW YORK
# NEW YORK COUNTY

PRESENT:    **HON. JAMES G. CLYNES**      PART      22M

*Justice*

-------------------------------------------------------------------X

ANTONIA DIAZ,

                 Plaintiff,

       - v -

NAGUA TAXI INC., EKHTIAR H. KHAN, ZOO NTELEKOS,
EMMANUEL NIKOLAKIS

                 Defendants.

-----------------------------------------------------------------X

| | |
|---|---|
| INDEX NO. | 155077/2020 |
| MOTION DATE | 11/11/2024, 11/11/2024, 11/11/2024, 11/11/2024 |
| MOTION SEQ. NO. | 002 003 004 005 |

**DECISION + ORDER ON MOTION**

The following e-filed documents, listed by NYSCEF document number (Motion 002) 69, 70, 71, 72, 73, 74, 75, 76, 77, 78, 79, 100, 103, 104, 105, 116

were read on this motion to/for           JUDGMENT - SUMMARY           .

The following e-filed documents, listed by NYSCEF document number (Motion 003) 82, 83, 84, 85, 86, 87, 88, 89, 90, 91, 92, 93, 98, 99, 101

were read on this motion to/for        SUMMARY JUDGMENT (AFTER JOINDER)     .

The following e-filed documents, listed by NYSCEF document number (Motion 004) 61, 62, 63, 64, 65, 66, 67, 68, 106, 107, 108, 109, 110

were read on this motion to/for           JUDGMENT - SUMMARY           .

The following e-filed documents, listed by NYSCEF document number (Motion 005) 80, 81, 94, 95, 96, 97, 111, 112, 113, 114, 115, 117, 118

were read on this motion to/for           JUDGMENT - SUMMARY           .

Upon the foregoing documents and following oral argument, the motion by Defendants Zoo Ntelekos and Emmanuel Nikolakis for summary judgment dismissing the complaint and any and all cross claims against them on the basis that they did not breach any duty owed, and, therefore, are not a proximate cause of the subject accident (Motion Sequence #2), the motion by Plaintiff Diaz for summary judgment on the issue of liability and dismissing Defendants' Affirmative Defenses (Motion Sequence #3), the motion by Defendants Nagua Taxi Inc. and Ekhtiar H. Khan for summary judgment on the grounds that Plaintiff Diaz fails to meet the serious injury threshold under Insurance Law 5102 (d) (Motion Sequence #4), and the motion by Defendants Zoo Ntelekos and Emmanuel Nikolakis for summary judgment on the grounds that

155077/2020 **DIAZ, ANTONIA vs. NAGUA TAXI INC.**
Motion No. **002 003 004 005**

Page 1 of 9

[* 1]

Plaintiff Diaz did not sustain a serious injury under Insurance Law 5102 (d) (Motion Sequence #5) are consolidated for decision and are decided as follows:

Plaintiff Diaz seeks recovery for injuries allegedly sustained as a result of a March 18, 2018 motor vehicle accident between a vehicle operated by Defendant Nikolakis and registered to Defendant Ntelekos, within which Plaintiff was a passenger, and a vehicle owned by Defendant Nagua Taxi and operated by Defendant Khan. This matter was joined for discovery and trial with *Matilde Vallejo, a/k/a, Matirde Vallejo v Ekhtiar H. Khan, Nagua Taxi Inc., Emmanuel Nikolakis and Zoi Ntelekos , a/k/a, Zoo Ntelekos* Index Number 152696/2021 pursuant to the Court Order dated April 19, 2023.

Summary Judgment – Liability (Motion Sequences 2 and 3)

In support of their motion (Motion Sequence #2), Defendants Ntelekos and Nikolakis rely in pertinent part on the examination before trial testimony of Defendant Nikolakis and Plaintiff Diaz's examination before trial testimony. Pursuant to an October 2, 2023 Court Order, Defendant Kahn is precluded from submitting their own affidavit in motion practice and from testifying at trial.

Defendant Nikolakis testified that the weather conditions that day were icy and very cold, but the roads were dry at the time of the accident; he had two passengers in his vehicle; he was driving north on Riverside Drive in the right lane going approximately 20 miles per hour with his seatbelt on; as he was crossing 134th Street, at the middle of the intersection, about two seconds before the accident, he observed a taxi coming from 134th Street, he pressed on the brakes and turned the wheel to the left to try to avoid the crash. He further testified that he was looking straight at the time of the accident, he did not see headlights on the taxi, and although the taxi had a stop sign, he thinks that the taxi did not stop at all. Defendant Nikolakis testified that the impact to his vehicle was on the right side from front tire to the mirror.

Plaintiff testified that she was a passenger in the vehicle driven by the manager from the job she did that day; she was seated in the rear seat on the right-hand side wearing her seatbelt. She further testified that she was sleeping more than awake and an felt impact from the front on the right-hand side of the vehicle, and that the vehicle moved to the left after the other vehicle impacted it.

**155077/2020  DIAZ, ANTONIA vs. NAGUA TAXI INC.**
Motion No. 002 003 004 005

Page 2 of 9

2 of 9

In opposition, Plaintiff contends that Defendant Nikolakis entered into the subject intersection without reasonable care when it was not safe to do so; Defendant Driver had the right of way, but he still had a duty to avoid a collision. Plaintiff submits the police accident report. The police accident report lists the parties and states that Defendant Kahn stated that he was making a right turn onto northbound Riverside Drive, he stopped at the stop sign and proceeded to make a right turn when Defendant Nikolakis struck him. The police accident report further states that Defendant Nikolakis stated that he was traveling northbound on Riverside Drive in the right lane when Defendant Kahn "entered..too late for him to stop or maneuver."

Defendants Nagua Taxi and Khan also oppose Defendants Ntelekos and Nikolakis' motion for summary judgment and dismissal of Plaintiff's complaint.[1] They contend that Plaintiff did not witness the incident and has no actual knowledge of what occurred. Defendants Nagua Taxi and Khan further contend that there are genuine issues of material fact as to whether co-Defendant Nikolakis operated his vehicle wantonly and that case law indicates that a motorist cannot operate "blindly and wantonly," even if they have the right of way.

In reply, Defendants contend that Defendant Nikolakis was entitled to assume that other drivers would obey the rules of the road that required them to yield.

In support of Plaintiff's motion for summary judgment on the issue of liability (Motion Sequence #3), Plaintiff relies on the examination before trial testimonies of Plaintiff, Defendant Nikolakis and Matilde Vallejo Gonzalez.

Gonzalez testified that he was a front seat passenger in a vehicle driven by Emmanuel Nikolakis, the manager of the restaurant where he was working; their vehicle had its headlights on; Gonzalez was wearing his seatbelt; he did not see the taxi at any time before the accident occurred; and he felt an impact on the right-hand side of the vehicle.

In opposition, Defendant Nikolakis and Ntelekos contend that they have established that they are not the proximate cause of Plaintiff Diaz's alleged injuries. They further contend that co-Defendant Khan violated VTL 1142 (a) and 1172 (a) and as such was negligent per se.

Defendants Nagua Taxi and Khan also oppose Plaintiff's motion for summary judgment.[2] They contend that a plaintiff passenger is not automatically entitled to summary judgment on

---

[1] The Court notes that the opposition submitted by Defendant Nagua Taxi Inc. and Defendant Khan (NYSCEF DOC. NO. 96) is incorrectly marked related to Motion Sequence 005.
[2] The Court notes that the opposition submitted by Defendant Nagua Taxi Inc. and Defendant Khan (NYSCEF DOC. NO. 94) is incorrectly marked related to Motion Sequence 005.

155077/2020  DIAZ, ANTONIA vs. NAGUA TAXI INC.
Motion No. 002 003 004 005

Page 3 of 9

3 of 9

liability. They further contend that Plaintiff testified that she was "more sleeping than awake" and that she did not see the other vehicle prior to the accident, and thus her testimony should not be entertained.

In reply, Plaintiff Diaz contends that both Defendant Khan and Defendant Nikolakis were negligent.

The parties dispute whether Defendant Nikolakis used reasonable care to avoid the collision when he testified that before the intersection, the view to his right down 134th Street was obstructed by parked cars, when he reached 134th Street, he "watched what he could see, because at that point there were no more parked cars."

On a summary judgment motion, "[t]he movant must make a prima facie showing of entitlement to judgment as a matter of law, tendering sufficient evidence to demonstrate the absence of any material issues of fact" (*Bazdaric v Almah Partners LLC*, 41 NY3d 310, 316 [2024] *citing Alvarez v Prospect Hosp.*, 68 NY2d 320 [1986]). "The proponent of a summary judgment motion must make a prima facie showing of entitlement to judgment as a matter of law, tendering sufficient evidence to demonstrate the absence of any material issues of fact" (*O'Brien v Port Auth. of NY & New Jersey*, 29 NY3d 27, 36 [2017] *citing Alvarez v Prospect Hosp.*, 68 NY2d 320, 324 [1986]). "Once this showing has been made, . . . the burden shifts to the party opposing the motion for summary judgment to produce evidentiary proof in admissible form sufficient to establish the existence of material issues of fact which require a trial of the action" (*Bazdaric v Almah Partners LLC*, 41 NY3d 310, 316 [2024] *citing Alvarez v Prospect Hosp.*, 68 NY2d 320, 324 [1986]). The failure to make such a prima facie showing requires a denial of the motion, regardless of the sufficiency of the opposing papers (*Guerra v 100 Stevens Ave. LLC*, 227 AD3d 467 [1st Dept 2024] *citing Winegrad v NY Univ. Med. Ctr.*, 64 NY2d 851, 853 [1985]).

Pursuant to Vehicle and Traffic Law 1142 (a), a driver entering an intersection controlled by a stop sign must yield the right-of-way to any other vehicle that is already in the intersection or that is approaching so closely as to constitute an immediate hazard (*Barahona v Perez*, 187 AD3d 498 [1st Dept 2020]). Here, Defendant Nikolakis testified that after the collision, he saw that Defendant Khan's entrance to the intersection was controlled by a stop sign, but he knew there was a stop sign for 134th Street at its entrance with Riverside Drive prior to the accident. Defendant Nikolakis further testified that there was no stop sign on Riverside Drive at the intersection with 134th Street.

155077/2020 **DIAZ, ANTONIA vs. NAGUA TAXI INC.**
Motion No. 002 003 004 005

Page 4 of 9

4 of 9

[* 4]

Generally, a driver with the right-of-way is entitled to anticipate that a motorist will obey traffic laws that require them to yield and is not comparatively at fault if they have only seconds to react to a vehicle that has failed to yield (*Caparitia v Johnson*, 216 AD3d 529 [1st Dept 2023]). However, the driver traveling with the right-of-way may be found to have contributed to the accident if they do not use reasonable care to avoid the accident (*Hsin Cheng v Adami*, ___AD3d___, 217 NYS3d 664, 2024 NY Slip Op 04764 [2024]). Here, while Defendant Nikolakis testified that as soon as he saw Defendant Khan, he veered to the left and stepped on his brakes, there are issues of fact as to whether Defendant Nikolakis used reasonable care to avoid the accident by looking right prior to entering the intersection to ensure that it was safe to proceed, even when having the right of way (*Gonzalez v Bishop*, 157 AD3d 460 [1st Dept 2018]; *see also Aponte v Vani*, 155 AD3d 929 [2d Dept 2017]). Defendant Nikolakis did not unequivocally testify that he had a clear, unobstructed view of the traffic, and as such did not establish, as a matter of law that he used reasonable care to avoid the accident.

The motion by Defendants Ntelekos and Nikolakis is denied.

Plaintiff Diaz has established prima facie that she is free from liability as an innocent passenger only. Plaintiff's testimony that she has no personal knowledge of how the accident occurred because she did not see how it happened does not establish prima facie negligence by Defendants (*Kaplan v Tsirlin*, 164 AD3d 1150 [1st Dept 2018]). Issues of fact remain as to the liability of Defendants.

Summary Judgment – Serious Injury (Motion Sequences 4 and 5)

Defendants Nagua Taxi and Khan (Motion Sequence 4) and Defendants Ntelekos and Nikolakis (Motion Sequence 5) move for summary judgment on the grounds that Plaintiff Diaz did not sustain a serious injury under Insurance Law 5102 (d). Plaintiff Diaz's Bill of Particulars alleges injuries to Plaintiff's left knee, right knee, cervical spine, lumbar spine, left shoulder, and right shoulder and that she was confined to her bed and home for 6 months following the accident and intermittently thereafter. In support of their motion (Motion Sequence 5), Defendants Ntelekos and Nikolakis adopt and incorporate the facts, legal arguments, procedural history and exhibits of the motion by co-Defendants Nagua Taxi and Khan (Motion Sequence 4).

Defendants rely on the independent medical examination conducted by Dr. Salvatore Corso, orthopedic surgeon and Plaintiff's examination before trial testimony.

155077/2020 DIAZ, ANTONIA vs. NAGUA TAXI INC.
Motion No. 002 003 004 005

Page 5 of 9

5 of 9

Dr. Corso examined Plaintiff Diaz on May 5, 2022. Dr. Corso measured Plaintiff's range of motion with a goniometer and found normal range of motion and negative orthopedic tests as to Plaintiff's cervical spine, lumbar spine, right shoulder, left shoulder, right knee, and left knee. Dr. Corso determined that Plaintiff's alleged cervical spine sprain, lumbar spine sprain, bilateral shoulder sprain, and right knee sprain had all resolved, as had her status post left knee arthroscopy. Dr. Corso concluded that Plaintiff did not sustain any significant or permanent injury as a result of the subject motor vehicle accident. He noted that there are no objective clinical findings indicative of a present disability, and functional impairment, which prevents Plaintiff from engaging in activities of daily living, and usual activities including work, school, and hobbies.

Plaintiff testified that immediately after the accident, she was confined to her bed for almost three months and immediately after the accident, she was confined to her home for more than three months. Plaintiff also testified that she underwent surgery to her left knee, and after her surgery, she was confined to her bed and to her home for around nine months. She further testified that she is no longer able to stand for a long time because her back starts to hurt, she isn't able to comb her hair, shower, or wash dishes, and she has trouble exercising because she can no longer lay on the floor.

In opposition to both motions, Plaintiff contends that there is a question of fact as to whether Plaintiff sustained a serious injury. She submits an affirmation and medical records of Dr. Yvette Abraham, Plaintiff's treating physician, and Inwood Medical Care, PLLC, the MRI reports by Dr. Steve B. Losik, radiologist, of Westchester Radiology & Imaging, PC; and the surgical records by Dr. Jeffrey Cohen and Dr. Mark Kramer, orthopedic surgeons, of Cohen & Kramer, MD, PC.

Dr. Abraham first examined Plaintiff on March 26, 2018 and measured Plaintiff's range of motion with a dual inclinometer with impairments based on the AMA's Guides to the Evaluation of Permanent Impairment. At Plaintiff's initial examination, Dr. Abraham found a limitation of range of motion as to Plaintiff's cervical spine, lumbar spine, bilateral knees, and bilateral shoulders and found that Plaintiff suffered from a marked (75-99%) disability and advised that Plaintiff abstain from work. Plaintiff also underwent MRIs to all affected areas in April 2018. Dr. Abraham found a disc herniation in Plaintiff's lumbar spine; disc bulges in Plaintiff's cervical spine, right shoulder joint impingement of the rotator cuff with bone marrow edema in the distal clavicle and adjacent acromion with fluid in the acromioclavicular joint, likely as a result of recent

**155077/2020 DIAZ, ANTONIA vs. NAGUA TAXI INC.**
Motion No. 002 003 004 005

Page 6 of 9

[* 6]

6 of 9

trauma as well as a partial tear in combination with tendinosis; left shoulder impingement of the rotator cuff and thickening consistent with intrasubstance partial tear in combination with tendinosis; left knee tear of the lateral meniscus, soft tissue swelling and edema consistent with recent trauma or bursitis, bursa with fluid consistent with pes anserimus bursitis, and joint effusion consistent with recent trauma; and right knee anterior soft tissue swelling and edema consistent with recent trauma or bursitis and joint effusion consistent with recent trauma. Dr. Abraham also noted that on May 21, 2018, Plaintiff underwent left knee arthroscopic surgery.

Dr. Abraham examined Plaintiff again on April 9, 2018, May 14, 2018, and July 2, 2018, and found limitation of range of motion of Plaintiff's cervical spine, lumbar spine, knees, and shoulders each time. Dr. Abraham found that Plaintiff Diaz was unable to work, or to otherwise engage in substantially all of her usual activities for more than 90 of the first 180 days following the accident. She also concluded that Plaintiff's MRI results reflect traumatic injuries that, within a reasonable degree of medical certainty, are causally related to the subject motor vehicle accident; and Plaintiff's left knee surgery of May 21, 2018 was necessitated by the injuries sustained in the subject accident.

Dr. Losik conducted an MRI of Plaintiff's lumbar spine on April 20, 2018 and reported disc herniation and a straightening of the lumbar lordosis. The MRI report of Plaintiff's cervical spine taken on the same day revealed disc herniation and disc bulges. The April 6, 2018 right shoulder MRI report revealed a bone marrow edema in the distal clavicle and adjacent acromion with fluid in the acromioclavicular joint, likely as a result of recent trauma and an intrasubstance partial tear in combination with tendinosis. The left shoulder MRI report of the same date also showed an intrasubstance partial tear in combination with tendinosis as well as impingement of the rotator cuff. Dr. Losik also reported that the April 16, 2018 MRI of Plaintiff's left knee showed a tear of the anterior root attachment, mild joint effusion consistent with recent trauma, and an anterior subcutaneous soft tissue swelling and edema, also consistent with recent trauma or bursitis. Dr. Losik reported that the April 16, 2018 MRI of the right knee also showed mild joint effusion and soft tissue swelling and edema.

Dr. Kramer performed a left knee arthroscopy of Plaintiff on May 21, 2018 and found a tear of the lateral meniscus, chondromalacia of the patella, and synovitis. The operative report indicated no complications.

**155077/2020　DIAZ, ANTONIA vs. NAGUA TAXI INC.**　　　　　　　　　　　　**Page 7 of 9**
**Motion No.　002 003 004 005**

[* 7]　　　　　　　　　　　　　　　　　7 of 9

In reply, Defendants Ntelekos and Nikolakis contend that Plaintiff's opposition is insufficient to defeat their motion, as the most recent record of an examination attached to the opposition is the report from Dr. Abraham which refers to an examination conducted more than six years ago on May 21, 2018. They contend that Plaintiff's doctor's affirmation does not contain the language required by CPLR 2106, and as such the affirmation is not in admissible form and cannot be relied upon by Plaintiff.

Under Insurance Law 5102 (d), the claim that a plaintiff suffered a serious injury above and beyond a pre-existing condition must be substantiated by "objective proof," such as an expert's designation of a numeric percentage of the plaintiff's loss of range of motion, or an expert's qualitative assessment of the plaintiff's condition, provided that the evaluation has an objective basis and compares the plaintiff's limitations to the normal function, purpose and use of the affected body organ, member, function, or system (*Suarez v Abe*, 4 AD3d 288, 289 [1st Dept 2004]). An "objective basis" for the expert's assessment may be provided by, for example, competent interpretations of MRI or CT scans (*Toure v Avis Rent a Car Sys.*, 98 NY2d 345, 353, 355 [2002]).

Here, Plaintiff raises an issue of fact as to whether she suffered a serious injury under Insurance Law 5102 (d) as a result of the subject motor vehicle accident, notwithstanding Defendants Ntelekos and Nikolakis' contention that the Court should reject the affirmation for failure to comply with the recent changes to CPLR 2106[3]. Defendants' motions are denied.

Accordingly, it is

**ORDERED** that the motion by Defendants Zoo Ntelekos and Emmanuel Nikolakis for summary judgment dismissing the complaint and any and all cross claims against them on the basis that they did not breach any duty owed, and, therefore, are not a proximate cause of the subject accident (Motion Sequence #2) is denied; and it is further

**ORDERED** that the motion by Plaintiff Diaz for summary judgment on the issue of liability (Motion Sequence #3) is granted only to the extent that she is free from liability as an innocent passenger only; and it is further

---

[3] CPLR 2106 was amended, effective January 1, 2024, to authorize the use of an affirmation in lieu of an affidavit by "any person wherever made," as long as the statement set forth therein had been "affirmed by that person to be true under the penalties of perjury" (L 2023, ch 559).

155077/2020   **DIAZ, ANTONIA vs. NAGUA TAXI INC.**                          Page 8 of 9
Motion No.  002 003 004 005

[* 8]

**ORDERED** that the portion of Plaintiff Diaz's motion dismissing Defendants' Affirmative Defenses is granted to the extent that the Affirmative Defenses relating to Plaintiff Diaz's use of a seat belt are dismissed; and it is further

**ORDERED** that Defendants Nagua Taxi Inc. and Ekhtiar H. Khan's Fourth Affirmative Defense is dismissed; and it is further

**ORDERED** that Defendants Zoo Ntelekos and Emmanuel Nikolakis' Second Affirmative Defense (Seat belt) is dismissed; and it is further

**ORDERED** that the portion of Plaintiff Diaz's motion dismissing Defendants' remaining Affirmative Defenses is denied; and it is further

**ORDERED** that the motion by Defendants Nagua Taxi Inc. and Ekhtiar H. Khan for summary judgment on the grounds that Plaintiff Diaz fails to meet the serious injury threshold under Insurance Law 5102 (d) (Motion Sequence #4) is denied; and it is further

**ORDERED** that the motion by Defendants Zoo Ntelekos and Emmanuel Nikolakis for summary judgment on the grounds that Plaintiff Diaz did not sustain a serious injury under Insurance Law 5102 (d) (Motion Sequence #5) is denied; and it is further

**ORDERED** that within 30 days of entry, Plaintiff shall serve a copy of this Decision and Order upon all Defendants with Notice of Entry.

This constitutes the Decision and Order of the Court.

| 1/7/2025 | | | JAMES G. CLYNES, J.S.C. |
| --- | --- | --- | --- |
| DATE | | | |

| CHECK ONE: | | CASE DISPOSED | X | NON-FINAL DISPOSITION | |
| --- | --- | --- | --- | --- | --- |
| | | GRANTED | ☐ DENIED | X | GRANTED IN PART | ☐ OTHER |
| APPLICATION: | | SETTLE ORDER | | SUBMIT ORDER | |
| CHECK IF APPROPRIATE: | | INCLUDES TRANSFER/REASSIGN | | FIDUCIARY APPOINTMENT | ☐ REFERENCE |

**155077/2020   DIAZ, ANTONIA vs. NAGUA TAXI INC.**
Motion No. 002 003 004 005

Page 9 of 9

9 of 9